WILLIAM BOGDAN (SBN 124321)
wbogdan@hinshawlaw.com
MICHAEL MCCONATHY (SBN 202982)
mmcconathy@hinshawlaw.com
HINSHAW & CULBERTSON LLP
One California Street, 18th Floor
San Francisco, CA 94111
Telephone:   415-362-6000
Facsimile:   415-834-9070

Attorneys for Defendant
VICTORY WOODWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CORBY KUCIEMBA, an individual; ROBERT KUCIEMBA, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> VICTORY WOODWORKS, INC., a Nevada corporation; DOES 1-20, inclusive, <br><br> Defendants. | Case No. 3:20-cv-09355-MMC <br><br> **DEFENDANT VICTORY WOODWORKS, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [FRCP 12(B)(6)]** <br><br> Complaint Filed:  October 23, 2020 <br><br> Date:              February 12, 2021 <br> Time:              9:30 a.m. <br> Department:   Courtroom F – 15th Floor |

## I. INTRODUCTION

Though a motion to dismiss requires that the facts alleged in the complaint be accepted as true, courts are not required to suspend disbelief when the facts are beyond reason. Determining whether the complaint states a plausible claim requires the court "to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Thus, when the complaint requires the court to pretend that Mrs. Kuciemba lives in a bubble, that Mr. Kuciemba avoided contact with every human being except his wife when off the job, and that the nature of the COVID-19 virus is such that it can be conclusively traced to a single source, "it is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez,* 735 F.3d 1060, 1076 (9th Cir. 2013). Limiting consideration to the plausible allegations of the complaint, plaintiffs fail to state a claim on which relief may be granted.

## II. LEGAL ARGUMENT

### A. The Exclusive Remedy Civil Bars Claims by Non-Employees, even Those Not Receiving Workers' Compensation Benefits

Mrs. Kuciemba got sick from a virus at home because Mr. Kuciemba allegedly got sick from that virus at work. Plaintiffs now try to avoid that reality by asserting the scientifically unsupported (and unalleged) claim that Mrs. Kuciemba somehow contracted the virus from Mr. Kuciemba's clothes. (Plaintiffs' Opposition 17:3). Regardless of plaintiffs' arguments in opposition to this motion, the complaint says what is says: Mrs. Kuciemba was injured at home because Mr. Kuciemba was injured at work. (Complaint ¶¶ 17-18, 24). Even if plaintiffs re-wrote the complaint to allege that Mr. Kuciemba was asymptomatic, he was still injured by an infection incurred at work, though in such a situation he may not have been damaged by that injury. Without Mr. Kuciemba's injury in the course and scope of his employment, Mrs. Kuciemba could not allege her entitlement to a recovery for the illness she contracted at home.

These facts eliminate any precedential value plaintiffs claim to find in *Snyder v. Michael's Stores, Inc.* 16 Cal.4th 991 (1997) In that action, during her mother's shift at work, a fetus ingested a commercial cleaning product on the employer's premises, eventually suffering birth defects as a result. The unborn child did not "catch" birth defects from her mother, and the birth defects were independent

1  of any injury to the mother. The child's injury would have occurred whether the mother was injured or not.

More importantly, the California Supreme Court in *Snyder* centered in on the child's status as a third-party lawfully on the employer's premises, and her right to be free from injury just as any customer in the store. *Id*. at 106-107. As a result, Michael's Stores merely owed the child the same duty it owed any customer: to conduct its business in a manner not to harm invitees. Despite the child being *in utero* at the time of exposure, the situation was no different than when any family member is injured while visiting an employee's jobsite. *Snyder* at 1005, citing *Robbins v. Yellow Cab Co.* 85 Cal.App.2d 811, 813-814 (1948).

In contrast, Mrs. Kuciemba never visited her husband's jobsite, and Mr. Kuciemba's employer never owed a commensurate duty to protect her in her home as it would if she were on its premises. She contracted Mr. Kuciemba's virus, not an independent disease different from what he suffered. *Snyder* merely affirms "in-house" liability for injuries to third parties, rather than supporting "take-home" liability to a member of the public who catches a virus from an employee.

Plaintiffs make two erroneous assumptions, unsupported by California law, in attempting to find exceptions to the preclusive effect of the exclusive remedy: 1) the exclusive remedy applies only to employees, and 2) the exclusive remedy applies only to claimants who qualify for a financial recovery of benefits. As demonstrated in the moving papers at pages 4-7, a person's independent injury will be barred, even if no benefits are provided directly to the non-employee, if the claim is dependent on an injury that the employee incurs in the course and scope of employment.

Plaintiffs' first erroneous assumption stems from their classification of any spouse's loss of consortium and negligent infliction of emotional distress as mere outcroppings of the employee's injuries. As recognized in *Williams v. R. J. Schwartz*, 61 Cal.App.3d. 628 (1976) and *Lefiell Manufacturing Company v. Superior Court*, 55 Cal.4th 275 (2012), these claims do not seek redress for injuries collateral to the employee's injury. Rather than being "merely derivative or collateral to the spouse's cause of action," they are independent injuries precluded by the broad language of the Labor Code because they are based on the injury to the spouse in the course and scope of employment. *Cole v. Fair Oaks Fire Protection District,* 43 Cal.3d 148, 162-163 (1987). Thus, as to the wife of an

injured employee, "the loss is hers alone." *Williams* at 632. Yet despite these separate classes of injuries to non-employee spouses, the exclusive remedy bars such claims because they are wholly dependent on an employee's injury in the course and scope of employment.

Plaintiffs' second erroneous assumption is that exclusive remedy cannot apply unless the injured spouse makes a financial recovery in addition to the benefits received by the injured worker. Spouses make no separate claim for loss of consortium or negligent infliction under a workers' compensation policy. Rather, "the work-related injury engenders a single remedy against the employer, exclusively cognizable by the compensation agency." *Snyder*, *supra,* at 997, *citing Williams* at 122. Were *Snyder* relevant to "take-home" liability, the California Supreme Court would have made that decision the bedrock of its decision in *Kesner v. Superior Court*, 1 Cal.5th 1132 (2016). Instead, the *Kesner* court neither discusses *Snyder* nor the effect of the exclusive remedy.

Most devastating to plaintiffs' claims is California's recognition that household members injured as a result of an employee's worksite injury are precluded from filing a civil suit by application of the exclusive remedy. *Salin v. Pacific Gas & Electric Co.*, 136 Cal.App.3d 185 (1982). Rather than admit that *Salin* disposes of their claims entirely, plaintiffs instead claim *Salin* has been overruled. The history of *Salin* in fact proves otherwise.

First, the California Supreme Court had the opportunity to either overrule or depublish *Salin* in 1982, but instead denied the request for Supreme Court review on December 1, 1982. *Id.* at 193. After forty years, the *Salin* holding remains undisturbed.

Second, though fifteen years later the California Supreme Court saw fit to mention *Salin* in a footnote, the Supreme Court clearly instructed that its reference carried no precedential effect because "we have no occasion here to rule on the correctness of the decision in *Salin* . . ." *Snyder, supra* 16 Cal.4th 991, at 999 n.2. "When a case assumes a point without discussion, the case does not bind future panels." *Estate of Magnin v. Commissioner of Internal Revenue*, 184 F.3d 1074, 1077 (9th Cir. 1999). "In our circuit, statements made in passing, without analysis, are not binding precedent." *In re Magnacom Wireless, LLC,* 503 F.3d 984, 993-94 (9th Cir. 2007).

Third, just two years after the *Snyder* decision, the same justices of the California Supreme Court who decided *Snyder*, including Justice Werdegar who authored the *Snyder* opinion, cited

favorably to *Salin* for the very proposition that is at issue here: "[T]he exclusivity of worker's compensation prevails as to heirs in light of Labor Code section 3600, which provides that liability under the Workers' Compensation Act is in lieu of any other liability whatsoever to any person . . ." *Horwich v. Superior Court,* 21 Cal, 4th 272, 286 (1999), *citing Salin* at 190. Even the dissent in *Horwich* cited favorably to *Salin*. *Horwich, supra,* at 290.

"The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.,* 615 F.2d 857, 861 (9th Cir. 1980). In performing that analysis, pronouncements of the state's highest court bind the federal court on questions of applicable state law. *Davis v. Metro Productions, Inc.,* 885 F.2d 515, 524 (9th Cir. 1989). "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir. 1986), *modified at* 810 F.2d 1517 (9th Cir. 1987). In the absence of controlling state authority, federal courts look to existing state law to assess how a state's highest court would resolve a state law question, "without predicting potential changes in that law." *Moore v. R.G. Industries, Inc.,* 789 F.2d 1326, 1327 (9th Cir. 1986).

The California Supreme Court on three occasions has left the holding in *Salin* undisturbed, and the Legislature has not seen fit to abrogate that holding. The *Salin* decision mandates that the exclusive remedy bars claims brought by non-employees arising from an employee's on-the-job injury. There is no California law to the contrary.

**B.  California Does Not Recognize an Employer's Duty to Protect Outsiders from a Virus Contracted by an Employee**

Even if their claims were not barred by the exclusive remedy, plaintiffs have failed to establish that Victory owes a duty to protect outsiders from the virus. In the five years since the *Kesner* decision, no court in the nation has applied that holding to any substance outside the asbestos realm. In other words, except for the release of asbestos from a jobsite, no court has ever held the employer liable to off-site members of an employee's household for any manufactured or organic substance the employee might have brought home from work. To use plaintiffs' term, it is the *Kesner* decision, not *Salin*, that

4

is the outlier.

Plaintiffs make light of the dangers of influenza, suggesting that employers could not possibly be held responsible for a condition so trivial. (Plaintiffs' Opposition 15:24-28). Yet just as with COVID-19, influenza is spread by droplets made when people cough, sneeze or talk, which land in the mouths or noses of people who are nearby or may possibly be inhaled into the lungs.[1] Despite medical advancements over the last 100 years, during the 2018-2019 flu season 35,000,000 people were infected, resulting in 490,000 hospitalizations and more than 34,000 deaths.[2] Yet over the last century, no employer has ever been held liable to a household member who contracted influenza from an employee who was exposed at work.

The *Kesner* decision dealt with the issue of who can recover for the breach of the already-existing duty to keep asbestos on the jobsite. In contrast, plaintiffs here are not asking for enforcement of a duty that already exists. Rather, they seek to impose an entirely new duty on the employer to keep the homes of employees COVID-free. As recognized by the CDC[3], pre-symptomatic as well as asymptomatic carriers are a real danger in transmitting the disease even though they display no outward signs of infection. See, *Midway Venture LLC v. County of San Diego*, ___ Cal.App.5th ___, 2021 WL 222006, *3 (Cal. Ct. App. January 22, 2021). Thus, employees who do not display any symptoms at all can escape detection and infect others despite the employer's compliance with the procedures recommended by the San Francisco Order of the Health Officer (SFOHO). See, *Id*. [Masks and social distancing do not eliminate the risk of infection.]

It is not possible for essential industries to keep pre-symptomatic or asymptomatic employees infected by COVID-19 from entering or leaving the jobsite: such a mandate would require twice daily COVID-19 testing of every employee, an impossible task given the limited resources available. Taking plaintiffs' theory to its logical extreme, should workers be found to be positive, employers would have to house their workers for the quarantine period or until they are cured, whichever is later, to comply with the duty to protect non-employees.

---

[1] https://www.cdc.gov/flu/about/disease/spread.htm
[2] https://www.cdc.gov/flu/about/burden/2018-2019.html
[3] https://www.cdc.gov/coronavirus/2019-ncov/php/open-america/expanded-screening-testing.html

Plaintiffs tout the *Kesner* rule limiting recovery to individuals in an employee's household, yet make no request for a similar limitation here. Nevertheless, it is not only just the unlimited number of potential plaintiffs that is the problem: Plaintiffs maintain that any business "who receives a financial benefit from bringing their workers together" should be held liable. (Plaintiffs' Opposition 18:5) As a result, each of the 26 essential businesses identified in SFOHO Section 16f i-xxvi would be subject to liability by non-employees.

Moreover, plaintiffs make no effort to limit potential civil liability to just workplace exposures. There is no limit to how wide the net is cast: the wife who claims her husband caught COVID-19 from the barista, the husband who claims his wife caught it from the dental hygienist, the roommate who claims a co-tenant while on jury duty caught it from the court bailiff, all these people would have potential claims against entities deemed essential to society's ability to function.

Even if plaintiffs agreed to limit liability to just the employers of the afflicted, those employers would have the right to file a cross-complaint for equitable indemnity against any (and every) entity or person who could have contaminated plaintiffs with COVID-19. Thus, Lucky's, Home Depot, the US Post Office and other essential businesses, both in plaintiffs' neighborhood and beyond, could find themselves embroiled in the Kuciembas' suit. In effect, an individual's recovery could drastically effect California's financial recovery at large as the economy attempts stagger back from the pandemic.

"Ultimately, duty is a question of public policy." *Ratcliff Architects v. Vanir Construction Management, Inc.*, 88 Cal.App.4th 595, 605 (2001), *citing Bily v. Arthur Young & Co.* 3 Cal.4th 370, 398-399 (1992). Whether a duty is present or absent is merely "a shorthand statement . . . rather than an aid to analysis . . . '[D]uty,' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Dillon v. Legg* (1968) 68 Cal.2d 728, 734, quoting Prosser, Law of Torts (3d ed.) pp. 332-333. Duty is invoked to limit "the otherwise potentially infinite liability which would follow from every negligent act . . ." *Dillon* at 739.

Here, plaintiffs are asking the employer to do what the global public health system and pharmaceutical industry failed to do: keep COVID-19 from invading the home. As a matter of public

6

policy, requiring private industry to meet that standard sets the bar too high.

### C.     **Plaintiffs' Private and Equitable Claims for Public Nuisance Fail**

Despite the law cited above barring their claims, plaintiffs suggest that somehow the San Francisco Order of the Health Officer allows them a private right of enforcement. The SFOHO directs that the sheriff and chief of police alone are to ensure compliance with and enforce the order. SFOHO §18. Punishment for any violation is limited to a fine and/or imprisonment. *Id*. California law requires that there must be a "clear, understandable, unmistakable" indication of an intent to permit a private right of action under a statute. It is not enough that the statutory text suggests such a right. *See, Lu v. Hawaiian Gardens Casino, Inc.* 50 Cal.4th 592, 597 (2010); *Mayron v. Google LLC* 54 Cal.App.5th 566 (2020).

Plaintiffs assume disinterest on the part of public agencies in their plight, yet there is no allegation that plaintiffs even attempted to trigger the enforcement provisions of the Order, let alone that those pleas were rebuffed. Public enforcement of such orders are normally "complaint-driven" because public agencies do not have the resources to continually inspect all business establishments and other activities. *Midway Venture*, supra, at. *6-7 [County issued 125 cease-and-desist orders and seven immediate closure orders in response to public complaints.] The moving papers "rattle off" the same agencies plaintiffs themselves cite in the complaint as the proper entities to enforce matters of public health. (Complaint 9:13-24). Plaintiffs have made no effort to interest the supposedly disinterested agencies to provide the very redress they demand from this court through an injunction.

Victory Woodworks invokes the Primary Jurisdiction doctrine to the extent plaintiffs attempt to go beyond their unsuccessful private causes of action for damages to seek injunctive relief. The case cited by plaintiffs is apropos: in an instance of first impression, courts should cede authority where a private ruling threatens the integrity of the regulatory scheme. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Requiring a jurist to suddenly attain a Master of Public Health degree in order to police San Francisco's business community falls outside the role any court is equipped to handle.

### III.    **CONCLUSION**

By attempting to impose a new duty on the employer to regulate public health, plaintiffs are

converting COVID-19 from a global tragedy into a cost of doing business.  As noted by the California Supreme Court, "duty" is essentially synonymous with the limit of activity society will require free enterprise to fund. With COVID-19, that price is too high: both the wrong and the remedy are beyond the private sector's reach.

We live in a world where a father blowing out the candles on his 60th birthday cake can infect a house full of family and friends. With society in such an upheaval, all Victory Woodworks was required to do, and did its best to do, was attempt to minimize the risk of COVID-19 transmission to its employees.  It cannot be charged with the duty to prevent the outside world from contracting the disease.

The motion to dismiss should be granted without leave to amend.

Dated:  January 26, 2021                                    HINSHAW & CULBERTSON LLP

                                                            By: */s/ William Bogdan*
                                                                WILLIAM BOGDAN
                                                                MICHAEL MCCONATHY
                                                                Attorneys for Defendant
                                                                VICTORY WOODWORKS, INC.